[Hussey v. Peebles.]

# Hussey, Administrator, v. Peebles.

### Action on the Case.

1. *Action on the case; when landlord may maintain against one removing crop of tenant.*—A landlord, having a lien upon the crop, may maintain a special action against a stranger, with notice of the lien, who destroys, removes, or so converts the crop, or changes its character, that the landlord cannot enforce his lien ; and if such interference has that effect, the motive with which the defendant acted is immaterial, except where smart money or vindictive damages are sought, when it is admissible in mitigation of damages.

2. *Dictum.*—What is said in *Blum* v. *Jones,* 51 Ala. 149, as to an action on the case not lying, where there was no intent to deprive the landlord of his lien, declared *mere dictum.*

3. *Suit against surviving partner; plaintiff in, what not competent to prove.*—Under the act, approved March 2d, 1875, amending section 2704 of the Revised Code, the plaintiff in a suit against a surviving partner is not a competent witness to prove the admissions or declarations of a deceased partner.

APPEAL from Circuit Court of Limestone.

Tried before Hon. WM. S. MUDD.

Appellant's testator, Lane, brought his action on the case against Peebles & Son for receiving from sub-tenants cotton grown on the rented land, having knowledge of plaintiff's lien for rent, and converting the same to their own use by selling and shipping it, &c. R. B. Peebles having died, the suit was continued against his son as surviving partner. The testimony shows that Lane, in 1870, rented his "Dancy place" to Elam Sharpe for the yearly rent of $4,000; that said Sharpe sub-let the place to various sub-tenants, who cultivated it, raising thereon crops of cotton and corn; that in October, 1870, the sub-tenants removed from the place thirteen bales of cotton, and stored them at a depot in Limestone county, and while it was there they turned it over to Peebles & Son, under an agreement that the cotton should be sold, and the proceeds applied to the payment of the indebtedness of the sub-tenants to Peebles & Son for supplies.

Under this agreement Peebles & Son sold thirteen bales of cotton, and applied the proceeds to the payment of the debts due them by the sub-tenants, knowing, at the time, that it had been grown on the "Dancy place" by sub-tenants of Sharpe, who had rented from Lane. Shortly after the cotton was removed, Lane obtained an attachment for rent, and levied it on all the crops grown on the "Dancy place"

except that turned over to the appellee, and failing to realize enough to pay the rent, brought suit.

During the progress of the trial, appellant, Hussey (Lane's executor), offered himself to prove that Robert B. Peebles, in his lifetime, had said that he knew the rent had not been paid at the time the cotton was received by him. The court refused to permit him to testify, and he excepted.

This was all the evidence, and the court charged the jury, that "if the defendants received and sold the cotton after it had been removed from the place, and applied the proceeds to the payment of debts due by the sub-tenants to them, and that all this was done in good faith, and without any intent to hinder or prevent said Lane in the collection of his rent, and without any intent to hinder or deprive him of his legal remedies for the collection of said rent, then the plaintiff cannot recover in this action, whether the defendant had notice or not, that the rent had not been paid at the time the cotton was received, shipped and sold."

To this charge the plaintiff excepted, and asked the following written charge: "If the jury believe from the evidence that the plaintiff rented the 'Dancy place' to one Elam Sharpe for the year 1870, who sub-let the same to other tenants, and said sub-tenants hauled a portion of the cotton off the place, and let the defendants ship said cotton to Memphis and sell the same, and appropriate the proceeds to the payment of a debt which said tenants owed said defendants; and if they shall believe from the evidence that the plaintiff's landlord's lien had not been paid, the plaintiff is entitled to recover the value of the cotton so received, shipped, sold, and appropriated by the defendants, if they find that the arrears of rent amount to more than the value of said cotton." This charge the court refused, and plaintiff duly excepted. The refusal to allow plaintiff to testify as a witness, and the charges given and refused, are now assigned as error.

WALKER & JONES, for appellant.—The lien of a landlord is a contract lien, and cannot be violated, and any one who deals with the property covered by it is liable to the same remedies as if it were a mortgage. The defendants had notice of the lien, and are liable. 48 Ala. 112; *Yates* v. *Joyce,* 11 Johnson, 136; 15 Ala. 166.

The court erred in refusing to permit Hussey to be examined. Acts of 1875, p. 252.

28

[Hussey v. Peebles.]

LUKE PRYOR, *contra.*—The right of property and possession of the cotton were in the tenants.   12 Ala. 158.   And the cotton having been removed by them, the sale and application of the proceeds by Peebles & Son, in due course of business, and with no intent to defraud, was not in law a *tortious* or wrongful act towards Lane, the landlord, but his lien for rent was thereby discharged.   15 Wallace, 601.

BRICKELL, C. J.—The important question presented by the record is, whether a landlord, whose rent remains unpaid, can maintain a special action on the case against the purchaser, with notice of the landlord's lien, of cotton grown on the rented premises by sub-tenants, which the purchaser removes from the State and converts into money, thereby depriving the landlord of the opportunity of pursuing the statutory remedy by attachment of the cotton for the rent.

The common law method of distress for rent was abolished in this State in 1812.   Clay's Dig. 506, § 2.   The English statute of 8 Anne, ch. 14, prohibiting the removal of goods and chattels levied by execution from any messuage, lands and tenements leased, until the payment of the rent due at the time of the levy, had been previously adopted here.   Clay's Dig. 210, § 45;   *Whidden* v. *Toulmin,* 6 Ala. 104.   In 1821, a statute enlarging this statute was enacted, prohibiting the levy of an execution on a crop grown on rented land, and its removal, until the payment or tender to the landlord of the rent due, not exceeding one year's rent. Clay's Dig. 506, section 3.   These statutes did not create a lien in favor of the landlord; they did not narrow the rights of the tenant, or confer on the landlord a right or interest in or to the goods or chattels, or the crops grown on the premises, which could be asserted against the tenant, or those dealing with him.   They merely gave the landlord a preference of payment, as between him and an execution creditor of the tenant.   *Frazier* v. *Thomas,* 6 Ala. 169.   In 1843, a statute was enacted prohibiting the removal from the premises of any crop grown on rented land until the payment or tender of all rent in arrear.   If the crop was removed, or the tenant was about removing it, without the consent of the landlord, and without payment or tender of the rent, the landlord was authorized to resort to an attachment against the crop.   Clay's Dig. 506, §§ 4, 5.   This statute is substantially incorporated in the Code.   R. C. §§ 2961-2963.   The purpose was to create a lien on crops grown on rented premises for the payment of the rent, and to provide

[Hussey v. Peebles.]

an efficient remedy for its enforcement. *Hawkins* v. *Gill*, 6 Ala. 620. The lien extends to the entire crop grown on the premises, whether by the tenant or one let in under him. *Givens* v. *Easley*, 17 Ala. 385. No right of property, nor right of possession of the crop, is conferred on the landlord; simply a right to charge it in priority to all other rights (except those of a purchaser without notice), with the payment of the rent. Of consequence, if it is removed or destroyed, he can maintain no action against the wrong-doer, which is founded on the right of property, or the right of possession. *Thompson* v. *Spinks*, 12 Ala. 155; *Dulany* v. *Dickerson*, *Ib.* 601. But whoever acquires possession of the crop, with notice of the landlord's lien, takes it subject to the lien. *Fowler* v. *Rapley*, 15 Wall. 328. So long as it remains in the possession of such person unconverted or unaltered, it is subject to attachment at the suit of the landlord. Such is the express language of the statute: "The attachment may be levied on the crop in the possession of the tenant, or any one holding it in his right, or in the possession of a purchaser from him, with notice of the lien of the landlord."

The landlord having a lien on the crop, and a stranger acquiring possession of it, with notice of the lien, holding it as the tenant held it, subject to the lien, is guilty of a tort, to the damage of the landlord, if he destroys, removes, or so converts or changes its character that the landlord cannot enforce his lien. For this tort, the landlord has no other appropriate remedy than an action on the case. Not having a right of property or a right of possession, he cannot maintain trespass, trover or detinue. To prevent a failure of justice, or to enforce a clear and well-defined legal right, "a plaintiff may maintain an action on the case whenever he shows that he has sustained damage from the tortious act of the defendant, for which established forms of law furnish no remedy." *Kelly* v. *McCaw*, 29 Ala. 231, and authorities cited.

Under the English statute of 8 Anne, ch. 14, to which we have before referred, which merely gave to the landlord a priority of payment over an execution creditor levying on goods and chattels of the tenant found on the leased premises, if the sheriff, having notice that the rent was unpaid, removed the goods, he became liable to an action on the case at the suit of the landlord. *Henchett* v. *Kimpson*, 2 Wils. 140; *Green* v. *Austin*, 3 Camp. 260; *Calvert* v. *Joliffe*, 2 Barn. & Ad. 418; *Colyer* v. *Speer*, 2 Brod. & Bing. 67 (6 Eng. Com. Law, 21); *Lane* v. *Crockett*, 7 Price, 566. The statute creating a lien on the crop for the payment of the rent, a lien which is to prevail against the tenant and

against all other persons than a purchaser without notice, the injury to the landlord from a removal or conversion of the crop by a purchaser with notice is the same in character and degree, that a removal was by the sheriff under the statute of Anne. Each is a tort, resulting in damage to the landlord. We do not doubt the right of the landlord to an action on the case, against the purchaser from the tenant with notice of the lien, who removes or otherwise converts the crop so as to deprive the landlord of the benefits of the remedy by attachment, thereby defeating his lien.

It is insisted, however, by the appellee that the action will not lie, unless it was the intent or design of the purchaser, in the purchase and conversion of the crop, to defeat or deprive the landlord of his lien, and the remedy by attachment. If he purchased in good faith, and converted without any purpose to affect the right of the landlord, the action is not maintainable. Such seems to have been the view of the learned judge delivering the opinion in the case of *Blum* v. *Jones*, June term, 1874. The question did not arise in that case, and all there said in reference to it is mere *dictum*, by which we do not feel bound. When an unlawful act causes injury to another, the motive, intent or design of the wrong-doer is, as a general rule, material only in determining the *quantum* of damages. The absence of an evil motive may limit the recovery to actual damages, while the presence of an intent to do injury may aggravate the damages. When there is an unlawful injury to the rights of another, it is not essential to civil liability that the mind should concur in the act. 1 Chit. Pl. 129. It is upon this principle that even a lunatic is liable *civiliter* for an injury to the person or property of another. In criminal proceedings the maxim applies, *"actus non facit reum, nisi mens sit rea."* In civil actions the intent is immaterial, if the act done be injurious to another. *Harcraft* v. *Creasy*, 2 East, 104. Whether the motive or purpose of the purchaser was to injure the landlord, to deprive him of his legal right and remedy, is not material. By removing or converting the crop, with notice of the landlord's lien, he has done an unlawful act, injurious to the landlord, and must answer for the damage his act produces.

The appellant was not a competent witness to prove the admissions or declarations of the deceased partner of the appellee. The estate of the deceased partner is interested in the result of the suit, and the statute of March 2, 1875 (Pamp. Acts 1874–5, p. 252), expressly prohibits either

party to a civil suit from testifying against the other as to any statement by, or transaction with, a deceased person whose estate is interested in the result of the suit.

The circuit court erred in the charge given, and the refusal to charge as requested; and the judgment must be reversed and the cause remanded.