# Wilkinson *v.* Ketler.

## *Detinue.*

1. *An amendment or revision of a statute repeals the former law.*—When a statute is revised or amended, the original statute is repealed, although the amendatory act may not contain a repealing clause.

2. *An amendment, containing the section amended, is constitutional.*—An amendatory statute which contains the act, or section as amended, complies with the requirements of the constitution.

3. *Damages caused by imperfect cultivation will not support an attachment for rent.*—Damages caused by the imperfect cultivation of rented land, can not be ascertained by calculation, or be the subject of an affidavit.  Consequently they will not support an attachment for rent, or justify a landlord's possession of the crop, against an older mortgagee whose mortgage has been duly recorded.

APPEAL from the Circuit Court of Butler.

Tried before the Hon JOHN K. HENRY.

William. W. Wilkinson instituted in the Circuit Court of Butler county an action of detinue against Ann Ketler to recover two bales of cotton and one hundred bushels of corn. The defendant pleaded the general issue, with leave to give in evidence any matter that might be specially pleaded.

On the trial, the plaintiff introduced in evidence an agreement for the delivery of three bales of lint cotton, of five hundred pounds each, executed by one March Cook, "for advances with which to make a crop" in 1875.  He also read in evidence a mortgage executed on the same day, April 10th, 1875, by the said Cook, conveying to the plaintiff two horses, one wagon, " twelve head of hogs, and all " his " crop for the present year, 1875."   This mortgage was also made to secure the payment of money, necessary stock and provisions, advanced to enable the mortgagor to make a crop.

Evidence was also introduced by the plaintiff which tended " to show that the cotton seized was raised by March Cook on the land of the defendant, during the year 1875, as her tenant, and was delivered to her by him after it was gathered, and was in her possession at the time of the levy of the complaint."   The weight and value of the cotton, and that the plaintiff had made advances under the mortgages, were proven.

The defendant, in her own behalf, was examined by written

[Wilkinson v. Ketler.]

interrogatories, and deposed that she rented land in 1875 to March Cook, and also advanced him money, supplies and farming implements, to the value of one hundred and sixty-four 14–100 dollars, to enable him to make a crop—that March Cook agreed to cultivate for her ten acres in cotton and eight acres in corn, and to "gather the crop in good order and in due time," for the use of the forty-seven acres leased by her to him for the year 1875. She testified that she had received from her tenant one hundred and seventeen 66-100 dollars in corn and cotton, exclusive of the bale in controversy, and that there still remained due forty-six 54-100 dollars; and that the crop was placed in her possession, according to contract, by the voluntary act of March Cook, who was sick and unable "to cultivate the land according to contract."

The defendant offered testimony tending to show "that if the crop on the eighteen acres had been well worked, it would at least have made one bale of cotton more in 1875 than it did make." To this evidence the plaintiff objected, but the court overruled the objection, and the plaintiff excepted. "But in the general charge, the court instructed the jury that a failure to cultivate the eighteen or twenty acres of land well, as required by the contract, would have been a breach of the contract, and would not be allowed the defendant in this action as an item of rent."

The evidence also tended to show that the crop of March Cook was voluntarily delivered to the defendant, after the same was gathered, for her to sell and pay herself for the advances made by her. It was also shown that the plaintiff knew that March Cook was cultivating the land of the defendant as her tenant.

The court, among other matters, charged the jury: "But for the amount of advances the defendant had furnished to her tenant, Cook, as landlord, and which were not paid for, which are necessary and proper advances with which to make the crop, the defendant being shown to be the landlord, had a lien on the crop superior to that of the plaintiff under his lien note or mortgage." To this part of the charge, the plaintiff excepted.

The plaintiff then asked a series of written charges. Some were given and others were refused. To the refusal of the court a general exception was reserved. Among the charges asked by the plaintiff, and refused by the court, are the following, viz.:

1st. "The court charges the jury, that if they believe from the evidence that the contract between Mrs. Ketler and

[Wilkinson v. Ketler.]

March Cook was, that he was to cultivate eighteen or twenty acres for the rent of her land, then the rent of the land was what it was worth in money to cultivate the eighteen or twenty acres.

2d. "That it is necessary for her to prove the value of the rent, or what it was worth in money to cultivate the eighteen or twenty acres, to give her lien as landlord.

6th. "The court charges the jury, that if they believe any portion of the advances made by Mrs. Ketler to March Cook was advanced to him to cultivate the land, the entire product of which she was to receive, then she is not entitled to a lien for that portion of advances made.

7th. "That if the advances were made generally, and were advanced and used by March Cook in the cultivation of the land rented, and also of her own crop, and the jury can not discriminate from the testimony between the advances, then they can not allow her for any advances."

WATTS & SONS, for appellant.—1. The landlord's lien is a creature of the statute, and is limited by it.—Code, §§ 2961, 2962. No lien is given when the amount or thing to be received as compensation for the lease is labor, or the crop to be worked and made on land not rented by the tenant.

2. The act of March 8th, 1871, (Acts 1870–1, p. 19), only gives a lien for advances made by the landlord in such cases as he may have an attachment for rent.—17 Ala. 362; 26 Ala. 212.

3. The admission of evidence as to what the eighteen acres would have produced if well cultivated, was clear error, and as to this, the only question is, whether it was cured by the general charge. The well established rule is, that injury is always presumed from error, and unless the record shows no injury could have resulted from error, it will cause a reversal. 12 Ala. 823; 14 ib. 681; 42 ib. 74; 1 Brick. Dig. p. 809, §§ 89, 90.

4. As to whether the contract of Mrs. Ketler was such a contract as created the relation of landlord and tenant, contemplated by the statute, we refer to 1 Hill (N. Y.) 234; Taylor's Land. & Ten. § 561, and notes; 9 Wend. 302; 2 Cow. 652; 3 Blackf. (Ind.) 264. If this be not so, we submit that act giving lien to landlords for advances was repealed by the act of 18th March, 1875.—Acts 1874–5, pp. 254, 255. When any section of the Code is amended, the section, *ipso facto*, is repealed.—See Const. 1868, Art. IV, § 2. The act of 1875 amends the section which gave the lien to the land--

lord, and repealed it. A lien granted by law can always be repealed by law.—28 Ala. The mortgage of Wilkinson gave him a superior right to the crop of Cook, and Mrs. Ketler had no lien on the crop for advances, and the charge of the court allowing her a lien for advances, was therefore erroneous.

GAMBLE & BOLLING, for appellee.

STONE, J.—Section 2961 of the Revised Code declares a lien in favor of the landlord, on the crop grown on rented land, for rent for the current year, and provides a remedy by attachment for its enforcement. This section was amended, and the old section as found in the Revised Code repealed, by the act approved March 8, 1871—Pamph. Acts 19—which, in lieu of said section, enacts that " a landlord has a lien on the crop grown on rented lands, superior to all other liens, for rent on, and advances made, t͟  ͟ist ͟  ͟id in the cultivation of said land for the current y͟  ͟  ͟ ͟ntitled to the process of attachment for the reco  ͟ ͟ the same, to be issued by any one of the officers name͟ in section two thousand nine hundred and twenty-nine, in the following cases, whether the rent or advances made as aforesaid be due or not at the time the attachment is sued out; first, when the the tenant is about to remove the crop from the premises, without paying the rent and said advances; second, when he has removed it, or any portion thereof, without the consent of the landlord." We say this enactment repealed the section of the Code amended, for such is the effect of an amendment thus made, whether the amending statute contains a repealing clause or not. The constitution affects the repeal. Constitution of 1868, art. 4, section 2.

The act approved March 18, 1875, Pamph. Acts, 254–5, after reciting section 2961 of the Revised Code, as it stood originally, without noticing the amendment made by the act of March 8, 1871, declares that said section " be so amended as to read :

" § 2961 (2533). A landlord, his assignee, or other *bona fide* owner of the amount due for rent, has a lien on the crop grown on rented land for rent for the current year, and is entitled to process of attachment for the recovery of the same, to be issued by any one of the officers named in section 2929 (2505), in the following cases, whether the rent is due or not at the time the attachment is sued out :

1. " When the tenant is about to remove the crop from the premises without paying the rent.

[Wilkinson v. Ketler.]

2. " When he has removed it, or any portion thereof, without the consent of the landlord."

The statute then amends section 2962, so as to make it cor-- respond with section 2961, as amended above, and contains the following repealing clause :

" That sections two thousand nine hundred and sixty-one, and two thousand nine hundred and sixty-two, as they are now in the Revised Code, be and the same are hereby repealed."

The question arises, what effect has the act of March 18, 1875, on the act of March 8, 1871? Were these several statutes enacted constitutionally?

The constitution of 1868, art. 4, sec. 2, ordains that " no law shall be revised or amended unless the new act contain the entire act revised, or the section or sections amended ; and the section or sections so amended shall be repealed." What is meant by the language, *unless the new act contain the entire act revised, or the section or sections amended?* Must it contain the entire act, or section or sections, as they stood before the amendment, or is it sufficient if the act contain the act or section as amended? On reason, and on the weight of authority, we hold that the latter method conforms to all the requirements of the constitution. It avoids all danger of error, confusion, imperfection or incongruity of expression, and possible imposition, which the constitutional requirement was intended to prevent.—See Cooley Cons. Lim. 151; *Tuskaloosa Bridge Co. v. Olmstead,* 41 Ala. 9.

We hold that each of the statutes above copied was constitutionally enacted, and that the reference and repealing clause in the act of 1875, to section 2961 of the Revised Code, must be referred to that section, as amended by the act of March 8, 1871; and the result is a repeal of the last named act.—See *Blake v. Brackett,* 47 Maine, 28. This repeal left the landlord without statutory lien for advances made, after March, 1875.

We regret this result, and think it proceeded from an oversight. Still, the repeal was effected in strict conformity with the provisions of the constitution copied above, and we are not permitted to disregard it. The mischief was healed by the act approved February 9, 1877.—Code of 1876, § 3467 *et seq.* Still, it leaves a gap of nearly two years when there was no such lien for advances.

That part of the affirmative charge of the court which was excepted to, being that part which commences with the:

[Grigg v. Banks.]

words, "But for the amount of advances defendant had furnished," is not reconcilable with the views we have expressed above, and must work a reversal of this case.

The charge of the court took from the jury all right to consider the evidence that the tenant Cook did not faithfully perform his contract and obligation to pay rent, by cultivating other lands of the landlord; and hence, no injury was done to plaintiff by allowing that evidence to go to the jury. The charge, in effect, ruled the evidence out.

The complaint of defendant, in the present case, was not that her tenant had not done labor, which his contract bound him to perform, in payment of his rent. If it had been that, it is probable attachment for its collection, the other conditions being present, would have lain in her favor.—See Taylor, Landlord and Tenant, §§ 561–2; *Camell v. Lamb*, 2 Cow. 652; *Valentine v. Jackson*, 9 Wend. 302; *Smith v. Cahon*, 10 Johns. 91. The complaint is that the crop was not well cultivated, and that the landlord was damaged by reason that it did not yield as much as it would have yielded, if well cultivated. These damages are not capable of being reduced to a certainty by calculation; could not be the subject of an affidavit, "that the amount claimed is or will be due for for rent," and consequently they will not support an attachment for rent or justify the landlord, obtaining possession of the crop, to defend that possession against an older mortgagee of the crop, whose mortgage had been duly recorded.

The exception to the court's refusal to give the several charges asked, was general. Some of them should not have been given. Notably, charges 6 and 7; for there is nothing in the record to show there was any evidence on which to base them.

For the error above pointed out, the judgment of the Circuit Court is reversed, and the cause remanded.