# Wilkinson *v.* Ketler.

### *Statutory Action of Detinue.*

1. *Mortgage on unplanted crop ; merely an equitable lien.*—A mortgage on a crop to be afterwards planted, unlike a mortgage on a *growing* crop, does not pass to the mortgagee the legal title, but creates only an equitable lien, which will not support an action of detinue for the recovery of the crop after it has matured and been gathered, until, at least, there has been a delivery under the mortgage.

2. *Mortgage on crop ; when crop is a growing one.*—A crop must be considered and treated as a *growing* crop, from the time the seed are deposited in the ground, as at that time the seed lose the qualities of a chattel, and become a part of the freehold, and pass with a sale of it.

3. *Landlord's lien for advances; none existed from March 18, 1875, to February 9, 1877.*—From March 18, 1875, when the act entitled "An act to amend sections 2961 and 2962 of the Revised Code," was approved (Acts 1874-5, p. 255), until the approval of the act of February 9, 1877, (Acts 1876-7, p. 74), now embraced in §§ 3467, *et seq.* of the Code of 1876, the landlord had no statutory lien for advances made by him to tenant. Re-

[Wilkinson v. Ketler.]

affirming decision on this point in this case on former appeal (59 Ala. 306).

4. *When provision in rent contract constitutes a parol mortgage.*—A provision in a parol contract of renting, by which the landlord reserved the right to contract and sell the crop to be raised by the tenant on the rented lands, the proceeds of the sale thereof to be applied to the payment of advances made by the landlord to the tenant, created merely a lien or parol mortgage on the unplanted crop of the tenant, for the security of such advances, which did not clothe the landlord with the legal title, nor limit the mortgageable interest of the tenant in the crop to the surplus which might be left after paying the advances.

5. *Prior to the statute, notice of relation of landlord and tenant was not constructive notice of contract lien for advances.*—Prior to the adoption of the statute giving a landlord a lien on the crop of the tenant for advances, notice to a third party dealing with the tenant, that he farmed on rented lands belonging to the landlord, did not constitute constructive notice that the landlord had made or would make advances to him, or that the landlord had a lien or mortgage securing such advances.

APPEAL from Butler Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

This was an action of detinue, under the statute, brought by the appellant against the appellee, for the recovery of two bales of cotton, and some corn; was commenced on 2d December, 1875, and was before this court, on appeal, at the December Term, 1877, when the judgment of the court below was. reversed and the cause remanded.— *Wilkinson v. Ketler*, 59 Ala. 306. After the cause was remanded another trial was had, which resulted. in a verdict and judgment for the defendant. The defendant's plea is not disclosed by the record on this appeal, but it appears from the record on the former appeal, that the first trial was had on the plea of "the general issue, with leave to give in evidence any matter that might be specially pleaded." The bill of exceptions taken on the second trial shows, that the matter of controversy and litigation was only one bale of cotton; and that on the trial plaintiff read in evidence a written obligation made by one March Cook, dated April 10th, 1875, by which he promised to deliver to the plaintiff three bales of cotton on the 1st day of October, 1875, of a stated weight and classification, in consideration, as recited in the obligation, of certain advances then made to him by plaintiff for the purpose of enabling him to make a crop during that year. The plaintiff also read in evidence a mortgage executed by Cook of even date with said obligation, duly recorded, and securing the faithful performance thereof, by which Cook conveyed to the plaintiff, together with other property, " all of my crop for present year, 1875," which crop, as shown by the evidence, was planted about the 1st of April 1875, but " there was no evidence as to whether the crop was growing or *in esse* at. the time the mortgage was executed, other than its being planted as aforesaid." The evidence for the plaintiff also tended to

[Wilkinson v. Ketler.]

show, that Cook had not complied with or performed his said obligation; that the bale of cotton in controversy was a part of the crop raised by Cook during the year 1875, and that it was grown on lands rented by him from the defendant, and was in her possesion when the suit was brought; that plaintiff, at the time the mortgage was executed, knew that Cook was the tenant of the defendant during said year, but that he did not know or have any notice of the terms and stipulations of the rental contract between defendant and Cook, and that the plaintiff never had possession of the bale of cotton in controversy before the commencement of the suit.

The defendant was examined as a witness in her own behalf, and her testimony tended to show, that, in January, 1875, she rented to March Cook for that year, forty-seven acres of land, in consideration of which, and as rent therefor, Cook was to cultivate for her eighteen acres of land—eight acres in corn and ten in cotton—which were to be well cultivated and the crop raised thereon to be gathered in good order and in due time; that said contract of renting was not in writing; that she thereby agreed to make, and did make advances to Cook during that year; that the amount of such advances was $164.14, of which a part is still due; that only a small part of such advances was made prior to the 18th March, 1875, and that she had received, before she obtained the bale of cotton in controversy, from Cook's crop enough to pay for the advances which she had made to him prior to said date. Her testimony also tended to show, that the crop was turned over to her by Cook according to a provision in the contract of renting, by which she was to take the control of, and sell the crop for the payment of the advances which she had agreed to make to him; that Cook died before the crop was gathered; that one Freeman worked with Cook during that year, and was to receive for his work a part of the crop raised on said rented land, and that Freeman had turned over to defendant his undivided part of the crop, in payment for advances which she had let him have.

The general charge of the court is divided into six separate and distinct propositions, numbered from 1 to 6, inclusive, to each of which the plaintiff separately excepted. These propositions are substantially as follows: The first is based on the theory, that the contract between the defendant and Cook in reference to the advances which she agreed to make to him, clothed her with the legal title to the cotton in controversy, and that no such title passed to the plaintiff under the mortgage which Cook afterwards executed to him, " as is necessary to enable him to recover." The second denied the right of the plaintiff to a recovery under his mortgage, if at the time the same was executed, he had notice of the contract between defendant and

[Wilkinson v. Ketler.]

Cook, and of the lien of defendant thereunder. The third is based on the theory that knowledge on the part of plaintiff of the relation of landlord and tenant existing between the defendant and Cook, at the time his mortgage was executed, was constructive notice to him of the terms of the tenancy and of the defendant's rights under said contract. The language of the fourth proposition is: "If you believe from the evidence ·that the mortgage, under which plaintiff claims the bale of cotton,. was given and executed at a time before the crop was planted,. or even if it had been planted, *it is invalid to pass such title to* plaintiff as to enable him to recover the bale of cotton sued for, unless he had come into the possession of said cotton before the suit was commenced." The fifth and sixth propositions are substantially the same. The language of the sixth is: "If the crop of cotton, on which plaintiff's said mortgage was taken, at the time it was executed, was not a growing crop, or a crop *in esse*, as distinguished from an unplanted crop, or a merely planted crop, then it could not pass to plaintiff such title to the bale of cotton as is necessary to enable plaintiff to recover in this action.

The plaintiff then asked the court in writing to give two charges to the jury, numbered respectively 1 and 2. The court gave the charge numbered 2, but refused the other; and to the refusal of the court to give the former the defendant excepted. This charge is, in substance, that, if the jury believe from the evidence, that Cook's crop had been *planted* at the time he executed to plaintiff the mortgage on said crop, and that the cotton in controversy was a part of that crop and was in possession of the defendant when the suit was brought, and the mortgage had not been satisfied, then the plaintiff was entitled to recover, unless the defendant had shown to their satisfaction, that "she made the proper and necessary advancements in provisions, teams or farming implements, or money to buy the same, to assist in making said crop, before the 18th day of March, 1875, to a greater amount or value, than the amount the proof shows she had received of said Cook, or from his said crop." The portions of the general charge excepted to, and the refusal to give the charge requested by the plaintiff, are here assigned as error.

J. W. POSEY and J. C. RICHARDSON, for appellant.—(1). Under the decision in this case on former appeal, the defendant, under the peculiar terms of her contract of renting with Cook, had no lien on the crop for advances.—59 Ala. 306. (2). "At law, a mortgage can operate on property, either actually in existence· at the the time of giving the mortgage and then actually belonging to the mortgagor, or potentially belonging to him as

[Wilkinson v. Ketler.]

an incident of other property then in existence and belonging to the mortgagor. And a lessee or renter of land has a sufficient interest in the land, to enable him to execute a valid mortgage of the crop to be grown upon the land during the whole term of the lease or rent."—Jones on Chattel Mortgages, §§ 140–1, and authorities cited in notes thereto; *Cotten v. Willoughby*, 35 Am. Rep. 565; *Everman v. Robb*, 52 Miss. 653; *Arques v. Wassom*, 51 Cal. 620; 22 Am. Rep. 644–56; *Butt v. Ellett*, 19 Wall. 544; *Moore v. Byrum*, 30 Am. Rep. 61, and notes; *Jones v. Webster*, 48 Ala. 112; *Stearns v. Gafford*, 56 Ala. 545; *Thrash v. Bennett*, 57 Ala. 161; *Booker v. Jones*, 55 Ala. 273; *Cook v. Steel*, 42 Texas, 53; *Robinson v. Ezzell*, 72 N. C. 232. A potential existence, as defined in *Moore v. Byrum, supra*, is "the prospective yield of something which has an actual existence." It is the future products of a substance which has ownership and being. It includes a planted crop.—4 Am. Dec. 560. See also Benj. on Sales, § 74; *Butler v. Hill*, 1 Baxter, 375. (3). But the crop, having been planted ten days, was a *growing crop*, and when severed from the soil, the legal title thereto passed under the mortgage.—*Robinson v. Maulden*, 11 Ala. 981; *Adams v. Tanner*, 5 Ala 742; *Lehman, Durr & Co. v. Marshall*, 47 Ala. 376, and other authorities *supra*. "The cotton plant in this climate is an annual,—known in the 'Science of Plants' as Gossypium Hirsutum. It is judicially known to be from seed sown in March and April, and that according as the earth is damp and warm, or dry and cold, the seed send a plant above the surface of the ground in from 4 to 10 days. (See Royles on cotton culture.)"—*Floyd v. Ricks*, 14 Ark. 286; *Rex v. Luffe*, 8 East 202; *Fay v. Prentice*, 9 Jur. 876; *Soloman's case*, 28 Ala. 88; *Brown v. Piper*, 1 Otto, 42; *The Scotia*, 14 Wall. 188; *Luke v. Calhoun County*, 52 Ala. 119. (4). Defendant's contract having been made in January, the legal title to Cook's crop did not pass to her thereunder; and of her lien under the contract the plaintiff had no actual knowledge, and he can not be held to have had constructive notice thereof, from his knowledge of the existence of the relation of landlord and tenant between defendant and Cook.

GAMBLE & PADGETT, *contra.*—(1). By the terms of the contract of renting the title to the crops to be raised by Cook, was retained by the defendant; and the parties had the right so to provide in the contract.—*Rinehart v. Olwine*, 5 Watts & Serg. 157; *Booker v. Jones*, Adm'r, 55 Ala. 266. This being the case, Cook had no title to the crop, which he could convey to the plaintiff; and, therefore, Cook's mortgage to plaintiff did not convey such title, and he can not recover. (2). The evidence shows that the mortgage was made on the 10th April, and.

[Wilkinson v. Ketler.]

that the crop was planted about 1st April. It is quite clear under this evidence, that the crop was not, when the mortgage was executed, a *"growing crop or in esse."* This being the case the plaintiff had no such title under his mortgage as would support detinue.—*Grant v. Steiner*, 65 Ala. 499; *Rees v. Coats*, 65 Ala. 256; *Booker v. Jones Adm'r*, 55 Ala. 266. (3). The plaintiff knew that the relation of landlord and tenant existed between the defendant and Cook, when his mortgage was executed, and this was sufficient to put him on inquiry. He is, therefore, chargeable with notice of the terms of the contract between defendant and Cook.

STONE, J.—We have settled in this State, and have no wish to depart from it, that a mortgage may be made on a growing crop, and that after the crop matures and is gathered, there is a legal title in the mortgagee, which will support an action for the recovery of chattels in specie—our statutory action of detinue. But a mortgage on a crop, to be afterwards planted and grown, stands in a different category. Such conveyance, at most, creates only an equitable lien; and, until the sale is perfected by a delivery of the product, no legal title exists in the mortgagee, and he can maintain no action at law for its recovery. In such condition, the legal title remains in the mortgagor. *Rees v. Coats*, 65 Ala. 256; *Booker v. Jones*, 55 Ala. 266.

The testimony in the present case tends to show that the crop was planted before, or by April 1st, 1875. The mortgage to Wilkinson bears date April 10th. There is no testimony on the subject whether, at that time, the crop had become visible above the ground, or, indeed, whether the seed had germinated. When must a planted crop be treated as a growing crop? If we were to enter upon the inquiry, what time is necessary for the germination of planted seed, we should encounter difficulties the shrewdest sagacity can not foreknow. Attending conditions enter materially into this inquiry. The many species of seeds employed in agriculture, have different periods for germination. The seasons—heat and moisture, or their absence—are factors in the solution of this problem. We think the only reasonable solution is, to hold that the crop must be treated as growing, from the time the seed is deposited in the ground. At that time it loses its qualities as a chattel, becomes part of the freehold, and passes with a sale of it. We thus relieve the question of all conjecture or judgment, as to the time when the planted seed takes on the incipient stage of vegetable life—when it becomes a growing crop. In other words, when it begins to grow.—4 Kent Com. 468; 3 Washb. Real Property, 338–9.

When this case was before in this court—59 Ala. 306—we

[Wilkinson v. Ketler.]

held that from March 18, 1875, to February 9, 1877, the land-lord had no statutory lien for advances made to the tenant. It was during this interval that Cook executed the mortgage to Wilkinson, upon which the plaintiff relies for a recovery. It follows that Mrs. Ketler can assert no claim for advances made after March 18, based on mere statutory lien. The contract of letting, by which Cook became her tenant, was oral, and ante-dated the mortgage to Wilkinson. In her testimony she employs these expressions, speaking of her contract with Cook: "Said crop was placed in my possession by a voluntary act of March Cook, according to contract before the crop was planted. . . . . He, March Cook, was to have forty-seven acres, more or less, known by said March Cook, portion of land was to be mine to control, and sell and pay myself for all advances or indebtedness whatsoever. . . . Said supplies were sold to March Cook, and to be paid for when I sold the crop on his portion of land, or the land he was to cultivate for himself. . . . The entire crop of March Cook was turned over to me by the voluntary act of said Cook, unasked for by me, that being the con-tract·before planting of said crop."

There is a seeming inconsistency in Mrs. Ketler's testimony. She says the entire crop was turned over to her by the volun-tary act of March Cook, her tenant; yet she proves that March Cook died before the crop was gathered, or harvested.

Under Mrs. Ketler's testimony, copied above, it is contended that the·crop of cotton and corn were to be her property to sell, and out of the proceeds, to pay herself for advances, and all other indebtedness. From this, the conclusion is claimed, that Cook, the tenant, had no mortgageable interest in the crop, save of such part as should remain, after paying Mrs. Ketler in full. There being no surplus, it is contended that Wilkinson can take nothing by his suit. Giving to Mrs. Ketler's testimony its full-est effect, we do not think it amounts to more than a lien, or parol mortgage. It did not clothe her with a title to the crop, which we have seen was not then planted.—*Rees v. Coats, su-pra.* In *Butterfield v. Baker,* 5 Pick. 522, there was a lease of a farm by indenture, with a provision, "that for the payment of the rent quarterly, all the produce of the farm, whether stand-ing and growing, or harvested and collected, if deposited upon the estate, should be holden, and be at the disposal of the lessor, in the same manner as if she were in the actual occupation of the farm; and that she should be authorized at all times to en-ter into the premises and take therefrom, for the payment of any portion of the rent that might be in arrear, any ripe crops standing and growing on the premises, or gathered and depos-ited on the same, she accounting to the lessee for all proceeds of the produce so taken, at a fair market price, towards the

[Allen v. Kellam.]

payment of the rent." The tenant, having in his possession certain corn raised on the premises, it was attached as his property, at the suit of a creditor. There was rent due on the premises, and the question was, whether the corn was subject to attachment as the property of the tenant. It was ruled that the attachment lien was paramount to the claim of the landlord. To the same effect are *Munsell v. Carew,* 2 Cush. 50, and *Lewis v. Lyman,* 22 Pick. 437. And the principle of these cases is made a part of the text of Jones on Chattel Mortgages, § 143. We think this case falls short of the principle declared in Jones on Chat. Mort. § 141.—*Booker v. Jones,* 55 Ala. 266.

In what we have said above, we refer to the title to Cook's crop, which his mortgage conveyed to Wilkinson, and to Mrs. Ketler's claim on the same crop. We make no reference to Freeman's crop, which the testimony tends to show was delivered to Mrs. Ketler. Wilkinson fails to show any right to that.

We do not think notice to Wilkinson that Cook was tenant on lands rented of Mrs. Ketler, as the law then stood, was constructive notice to him that she had made, or would make advances to him. The law then gave her no lien for such advances, and it could only exist by contract. Wilkinson can not be charged with a knowledge of the existence of such lien or parol mortgage, unless the jury are convinced he was informed, or had knowledge of it. The law is different now.— *Wilson v. Beard,* at present term.

Each of the charges, from 1 to 6 inclusive, except the one numbered 2, is opposed to the views above expressed. Charge No. 1 asked by defendant should have been given as asked; but if part of the cotton in the bale had been Freeman's, and had been turned over by him to Mrs. Ketler in payment, then it would have been proper to instruct the jury on that phase of the case.—*Smith v. Rice,* 56 Ala. 417.

Reversed and remanded.