# Atkinson & Turner *v.* James.

*Attachment Suit for Damages for Removal of Cotton upon which Plaintiff's held a Landlord's Lien for Rent and Advances.*

1. *Issue of attachment by clerk of Circuit Court.*—The clerk of the Circuit Court has authority, under the statute (Code, §§ 2929, 2931,) providing that he may issue attachments for the collection of "any moneyed demand the amount of which can be certainly ascertained," to issue an attachment in an action to recover damages for the removal of four bales of cotton upon which the plaintiff held a landlord's lien for rent and advances.

2. *Landlord's lien for rent of farm-lands and for advances; constructive notice.*—In February, 1890, the defendants took a mortgage from one W. on a crop to be grown by him that year, with knowledge that W. was a tenant of the plaintiff and that the crop mortgaged was to be grown on land rented by him from the plaintiff. In the fall of that year, W., who was then indebted to the plaintiff for rent and advances, delivered to the defendants four bales of cotton grown on the rented land, and the proceeds of the sale of the cotton were applied by the defendants on W.'s mortgage debt to them. The plaintiff sued the defendants to recover damages for the interference with his statutory lien for rent and advances (Code, § 3056), by the removal and sale of the cotton. *Held*, that the defendants were charged with constructive notice of W's debt to the plaintiff for rent and advances, and that the facts the defendants were residents of the State of Georgia, and that the four bales of cotton were delivered to them in that State, can avail them nothing, the land upon which the cotton was grown being this State.

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. J. R. DOWDELL.

The facts of the case are sufficiently stated in the opinion. The court, at the request of the plaintiff, gave the general affirmative charge in his behalf, to which the defendants duly excepted. The defendants asked the following charges in writing, and duly excepted to the refusal of each of them: (1.) "If the jury believe all the evidence in this case they must find for the defendants." (2.) "If the jury believe all the evidence in this case they can not find for the plaintiff for more than what is shown by the proof to be due from Washington to James (the plaintiff) for rent, and interest on that amount."

[Atkinson & Turner v. James.]

N. D. DENSON, for appellants.—(1.) The action is in case, and the plaintiff could have recovered exemp¹ary damages. It therefore falls under the fourth subdivision of section 2929 of the Code, and the clerk had no power to issue the attachment.—Code, §§ 2929, 2931. (2.) The only connection appellants had with the cotton was in the State of Georgia. It is presumed that the common law is in force in that State, in the absence of evidence to the contrary. "Rent, at common law, was a lien—a charge on the goods of the tenant, remaining on the demised premises. The landlord could distrain, however, only on the premises; and if the goods were removed by the tenant before distress, the lien, or right to charge them was lost."—*Lomax v. Le Grand*, 60 Ala. 537. The appellee's lien existed only by virtue of the statute law of Alabama, which can have no extra-territorial force. The cause of action against appellants (if any) arose in Georgia, and the statute not being effectual in Georgia, the plaintiff had no right to recover.—*Willis v. Missouri Pac. R. Co.*, 38 Am. Rep. 301; *Hyde v. Wabash, St. L. & Pac. R. Co.*, 37 Amer. Rep. 820; *Selma, Rome & Dalton R. Co. v. Lacey*, 43 Ga. 461; Rorer on Inter-State Law, p. 158. (3.) It is not shown that appellants had notice that James had furnished Washington anything for 1890, or that Washington was indebted to James for advances. The fact that appellants knew that Washington was a tenant of James could only charge them with notice of the indebtedness of Washington for rent. The refusal of the second charge asked by appellants was error.—*Wilson v. Stewart*, 69 Ala. 302. (4.) It does not appear that the tenant, after disposing of the cotton, did not have enough of his crop raised on the premises in 1890 to satisfy the plaintiff's lien. Therefore, no damage to the plaintiff is shown.—*Kelly v. McCaw*, 29 Ala. 231; *Hussey v. Peebles*, 53 Ala. 432.

W. J. SAMFORD, and W. H. THOMAS, *contra.*—(1.) The clerk had authority to issue the attachment. The suit was for a "moneyed demand," the amount of which could be "certainly ascertained."—Code, §§ 2929, 2931. (2.) The lien given by the statute to the landlord enters into and becomes a part of the rental contract.—*Ex parte Barnes*, 84 Ala. 540; *Dallas v. Timbirlake*, 54 Ala. 403; *Knighton v. Curry*, 62 Ala. 404; *Dennick v. Central R. & B. Co.*, 103 U. S. When the appellants, with knowledge of the tenancy, took and appropriated the cotton, they interfered with a contract lien, and such wrong would be redressed in any country where the common law prevails. (3.) The knowledge, admitted by ap-

pellants, of the tenancy, should have led them to the knowledge of the rent advances.—*Wilkerson v. Ketler*, 69 Ala. 442.

COLEMAN, J.—This is an action in case to recover damages against appellants for having purchased and removed four bales of cotton upon which the plaintiff held a landlord's lien for rent and advances. The suit was begun by attachment, issued by the clerk of the Circuit Court. The defendant pleaded in abatement that the clerk had no authority to issue the attachment.

Under our statute any civil action, whether arising *ex contractu* or in tort, under proper conditions, may be commenced by attachment.—Code, 2929. A clerk of the City or Circuit Court is authorized to issue the attachment "to enforce the collection of a debt whether due or not," and for the collection of "any moneyed demand the amount of which can be certainly ascertained." When the action is to recover "damages for a breach of contract when the damages are not certain or liquidated," or when the "action sounds in damages merely," only a judge of the Circuit Court, probate judge, or chancellor has authority to issue the attachment.—Code, §§ 2929, 2931.

The term "moneyed demand" ordinarily is of comprehensive meaning, and may arise out of contract or breach of duty. Whether its collection be enforced by action *ex contractu* or *ex delicto* does not alter its character as a moneyed demand for which an attachment will lie. The statute limits the authority of the clerk to issue attachments for a moneyed demand to cases in "which the amount can be certainly ascertained." The term "moneyed demand," as used in section 2739 of the Code,—which provides that "if suit be brought on any moneyed demand for a less amount than that of which the court has jurisdiction, the suit must be dismissed," &c.—was construed by this court many years ago in *King v. Parmer*, 34 Ala. 416, to apply only to actions *ex contractu*. In construing that section the court stated the context controlled the meaning of the phrase, and in the opinion confined the definition given to the term to the section as there "employed." In the same case Chief-Justice A. J. WALKER, *arguendo*, held that "moneyed demand," as used in section 2503, Code of 1852, which is the same as section 2929 of the present Code, included trover, an action in tort. This decision was re-affirmed in *Mills v. Lacy*, 58 Ala. 458, and as there construed the act has been re-adopted into the present Code. Section 2934 of the Code provides that before an attachment shall issue to enforce the collection of a de-

mand "for a breach of contract when the damages are not certain or liquidated;" or "when the action sounds in damages merely," an additional "affidavit in writing must be made of the special facts and circumstances," so as to enable the officer "to determine the amount for which a levy must be made," &c. In such cases the clerk has no authority to issue an attachment. Attachment may be issued in trover by the clerk, the recovery in such cases being clearly ascertainable from the value of material things. So in actions on the case, if in the particular action the character of the demand is such that the recoverable damages are fixed by a legal standard, such as are ascertainable from the value of material things, the clerk may issue the attachment. This is clearly the meaning of the statute, for it is provided in the third and fourth subdivisions of section 2929 "that when the damages are not certain or liquidated," or when the "action sounds in damages merely," the clerk can not issue the attachment, while it is expressly provided that to enforce legal moneyed demands in all other causes, whether *ex contractu* or *ex delicto*, he may issue the attachment. The inquiry arises, does the law fix a legal standard for the admeasurement of damages "certainly ascertainable," when the action is in case to recover damages for the destruction of a landlord's lien upon property for rent and advances, which in the present case was four bales of cotton. The lien does not confer on the landlord a right of property or the right of possession, but simply a right to charge it with the payment of rent and advances. As was said in *Westmoreland v. Foster*, 60 Ala. 455, "it is simply a right to have so much money carved out of the proceeds. Trespass, detinue or trover can not be maintained on such a right."—*Hussey v. Peebles*, 53 Ala. 435. The property upon which the lien is given by the statute is a material thing, and its value ascertainable with legal certainty. No damages are recoverable over and above the value of the property upon which the lien existed, and this is limited by the amount of the debt for which the lien is given. The recovery, though the action is in case, is the same as when assumpsit is brought for money had and received, against one who has converted the crop into money with the knowledge of the lien.—*Thompson v. Merriman*, 15 Ala. 166; *Westmoreland v. Foster, supra; Coffey v. Hunt*, 75 Ala. 240. We are of opinion that the court ruled properly in sustaining the demurrer to the plea in abatement.

The facts show that defendants were non-residents merchants doing business at West Point, Georgia, just across

the State line, and only two or three miles from the land upon which the cotton grew. It is not controverted that Frank Washington, from whom the cotton was purchased, was indebted to plaintiff for rent and advances for the year 1890. It further appears that, to obtain additional advances, on the 18th of February, 1890, Frank Washington executed a mortgage to defendants on his crop of cotton to be grown that year on lands in Chambers county, Alabama. The evidence sufficiently shows that the defendants knew when they took the mortgage and made the advances to Frank Washington, that he was a tenant of James, and that the crops mortgaged were to be grown on lands rented from James. In the fall of the year Frank Washington carried four bales of cotton, raised on the rented land, to West Point, in Georgia, and sold the same to defendants, the proceeds to be applied to the payment, and which were so applied, of the mortgage debt. It appears that the cotton was carried off and sold without the knowledge or consent of the landlord. Defendants admit that they knew that Frank Washington was a tenant of James, but they deny that they had any notice or knowledge of the fact that Frank Washington had obtained advances from or was indebted to his landlord for advances. They claim to be innocent purchasers of the cotton after it was removed into the State of Georgia, for a valuable consideration, and without notice of the landlord's lien for advances.

A short and simple denial of notice of plaintiff's lien for rent and advances may be a mere conclusion, and when the proven and admitted facts exclude the conclusion, the denial amounts to nothing as evidence. The only real question presented by the record, and which has not been decided, is, whether a person who, when he purchases a crop from one known to be a tenant, and knows that the crop was grown on rented land, is charged with constructive notice that the tenant owes his landlord for rent or advances or both, which is secured by the statutory lien, if in fact such an indebtedness exist. The statute of this State as now framed declares and defines the landlord's lien for rent and advances, and, as interpreted by the decision of this court, clearly establishes that a purchaser of a crop grown on rented land under such circumstances would be chargeable, at least, with constructive notice. It is true that some of the decisions referred to were made with reference to the lien for rent only, and before the statute had created the lien, as now framed, for advances. The statute declares (Code, § 3056), "A landlord has a lien, which is paramount to, and has pre-

[Atkinson & Turner v. James.]

ference over all other liens on the crop grown on rented lands for rent for the current year, and for advances made in money, or other thing of value. . . , for the sustenance or well being of the tenant, or his family," &c. Whatever right a landlord may assert against one who deprives him of his lien for rent, may be asserted and enforced against one who in the same manner interferes with his lien for advances. The common law methods of distress for rent have been abolished in this State by statute, and the landlord may enforce his lien upon the property whenever found, although removed off the premises, except as against innocent purchasers. These conclusions are supported by the following authorities, and others therein cited : *Manasses v. Dent,* 89 Ala. 565 ; *Lomax v. LeGrand,* 60 Ala. 537 ; *Wilkerson v. Ketler,* 69 Ala. 441-2; *Hussey v. Peebles,* 53 Ala. 436 ; *Boggs v. Price,* 64 Ala. 519; *Ex parte Barnes,* 84 Ala. 540. The fact that the cotton was delivered to defendants in Georgia can avail them nothing. Having knowledge that the cotton was grown on rented land, they are charged with constructive notice of plaintiff's lien for rent and advances at the time of their purchase from his tenant. The price was credited upon a mortgage purporting to have been made in Alabama. It was recorded in Alabama, and the cotton was delivered and received according to the provisions of the mortgage contract. It would be a strange principle of law which would hold these defendants liable if the cotton had been purchased by them in Alabama, and removed by them into Georgia, and yet exempt them from liability by virtue of an arrangement made with the tenant by which the tenant delivered the cotton across the border of the State. We are not called upon to adjudicate what the rights of the parties would be, if the present suit had been instituted in the State of Georgia. Plaintiff's rights are secured to him by a statute of Alabama. The property attached lies in Alabama, and the court had jurisdiction both of the person and property of the defendants. In such cases the rights and remedy are amply furnished by the law and courts of this State.

Affirmed.